## Case No. 10,174.

### Ex parte NEWMAN.

### [2 Gall. 11.] 1

Circuit Court, D. Massachusetts. Oct. Term, 1813.

NATURALIZATION—DECLARATION OF INTENTION BY ALIEN ENEMY.

An alien enemy cannot be permitted to make the declaration required by law preparatory to the naturalization of aliens.

Before STORY, Circuit Justice, and DAVIS, District Judge.

1 [Reported by John Gallison, Esq.]

## Case No. 10,175.

### In re NEWMAN.

[3 Ben. 20; 2 N. B. R. 302 (Quarto, 99); 1 Chi. Leg. News, 123.] 1

District Court, S. D. New York. Nov., 1868.

BANKRUPTCY—TRADESMAN—BOOKS OF ACCOUNT.

1. The question, what are proper books of account to be kept by a merchant or tradesman, is in each case a question of evidence.

2. Where a bankrupt, for a year before filing his petition, was engaged in the business of buying and selling furniture on his own account, having a shop where his goods were displayed and sold, held, that he was a merchant or tradesman, under the twenty-ninth section of the bankruptcy act [of 1867 (14 Stat. 517)].

3. Where a bankrupt kept no books but two memorandum books, from which he could not tell the amount of the business he had done, or the particulars and consideration of debts due to and by his principal debtors and creditors, held, that the bankrupt had not kept proper books of account under the twenty-ninth section, and a discharge must be refused.

[In the matter of Abraham Newman, a bankrupt.]

S. Hirsch, for bankrupt.
P. H. Vernon, for creditors.

BLATCHFORD, District Judge. The first specification filed in opposition to the discharge of the bankrupt sets forth that, during the whole of the year 1867, he was a merchant engaged in the purchase and sale of furniture on his own account, at No. 149 Bowery, in the city of New York, and yet, with the fraudulent intent of concealing from his creditors the true state of his affairs, he kept no books of account whatever during any of the said period. The twenty-ninth section of the bankruptcy act provides, that no discharge shall be granted, if the bankrupt, being a merchant or tradesman, has not, subsequently to the passage of the act, kept proper books of account. The act was passed March 2d, 1867. The provision in question does not qualify in any manner the effect of the non-keeping of the books. It does not say that the non-keeping must be with intent to defraud his creditors or to conceal anything from his creditors. In the same section, in the case of destroying or making false entries in books, or removing or transferring property, the intent and purpose of defrauding creditors, or of preferring a particular creditor, or of

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 1 Chi. Leg. News, 123, contains only a partial report.]

preventing the property from being administered in bankruptcy, are made essential conditions. By the English bankruptcy statute, an intent on the part of the bankrupt to conceal the true state of his affairs must be coupled with a wilful omission to keep proper books of account, in order to warrant the refusal of a discharge. Undoubtedly, under the act of 1867, if the non-keeping of any book or books be shown to have had no effect in concealing from creditors the true state of the bankrupt's affairs, that circumstance must have weight in determining whether such books as were kept were proper books. But the intent of the non-keeping of books is of no importance. The mere omission is the thing plainly interdicted. Therefore, so much of the specification under consideration as attaches an intent to the omission may be properly rejected as surplusage; and the allegation that the bankrupt kept no books of account whatever during the period referred to, is equivalent to an allegation that he kept no such books of account as he was required by the statute to keep, that is, no proper books of account.

From the 1st of January, 1867, to the 1st of January, 1868, during which period many of the debts due by the bankrupt, as set forth in his schedule of debts, were contracted, he was engaged in business on his own account, buying and selling furniture, in the city of New York. He had a shop or store where his wares or merchandise were displayed and sold. He was, therefore, a merchant or tradesman, under the twenty-ninth section. His voluntary petition was filed on the 3d of February, 1868. On the 10th of September, 1868, the bankrupt testified, on his examination, that he did not keep any books of account at all while he was in the furniture business on his own account. The specifications in opposition to the discharge were filed on the 17th of September, 1868. The bankrupt was again examined thereafter, and, on the 12th of October, 1868, testified, that when, in his original examination, he stated that he did not keep books when he carried on business, he meant that he did not keep a regular set of books; that he cannot write and does not know how to keep books; that he can write his name only; that he can write a little German so far as to write his name, but not to keep books; that he kept a memorandum book, in which he made entries in German that he could understand, and that he relied upon that; that he did not keep a book-keeper because his business could not afford it; that he had lately found the memorandum book referred to; that at the time the petition and schedules were prepared that book was not shown to the counsel who prepared them, because it was then lost; that he told his counsel at that time that he did not keep any books of account, but only kept such memorandum book; that

his schedules were made up from his memory of what people owed him, and the schedules of what he owed were made out from bills in his possession; and that the memorandum book was kept in German, with, it may be, a few entries in English by his daughter. On the 17th of October, 1868, the bankrupt produced two memorandum books as being the only books that were kept by him. He was then examined in regard to those books. Being asked what was the nature of the entries in the books, he stated that when a man bought goods of him he put it down there. He stated, that the entries were in the handwritings of himself, his son, his daughter, and strangers when they bought goods of him; that every thing of his affairs was in those books; that the names of all purchasers to whom goods were sold and delivered were there; that some of their residences were there, and some not; and that the books contained entries of very few of his purchases in the furniture business. The books have been submitted to the inspection of the court, but the question whether they were the proper books of account required to be kept by the bankrupt must depend upon the testimony. After the books were produced, the bankrupt was asked, on his examination, whether he could tell what amount of business he did during the year 1867. He replied that he did not know, but that, as near as he could tell, it might be from one to five thousand dollars. In his examination on the 10th of September, he stated that one Rosenberg, who appears in his inventory of assets as a debtor to him for $887.50, owed him that amount for money loaned and furniture bought, but he did not know how much was for money loaned, or how much was for furniture bought; that, in regard to a claim in his inventory against one Riddle for $476.-40, it was for furniture, but he could not tell the price of the furniture; and that, in regard to a claim in his inventory against one Jones for $2,280.76, it was for money lent at different times, but he could not tell the dates, and it might be a year and a half ago. All the items of assets in the inventory, nine in number, and amounting to $5,544.09, are put down merely as due by nine persons. In regard to Rosenberg, Riddle, Jones, and three others, the debts due by which six amount in the aggregate to $5,405.09, their present residences are stated in the inventory to be unknown. The creditors were entitled to know what amount of business the bankrupt did during the year 1867, after the passage of the bankruptcy act, nearer than a conjecture that it was from one to five thousand dollars. They were also entitled to know the particulars and consideration of the indebtedness due by Rosenberg, and the price of the furniture sold to Riddle, and the details of the money loaned to Jones. If the bankrupt had kept proper books of account, and if

these memorandum books were such proper books of account as he ought to have kept, he would have been able to give the information asked on the points referred to. The fact that, after these books were produced, he could not tell more nearly than he did the amount of his business during the year 1867, is conclusive evidence that the books he kept were not proper books. The question of what are proper books must be in each case a question of evidence. What would be proper and sufficient books in one case would be improper and insufficient in another. In the present case, on the evidence, the books were not such proper books of account as ought to have been kept. It may perhaps be shown that they were proper, and I am disposed to allow an opportunity to the bankrupt to do so, if he desires to introduce further evidence on the point. At present, I refuse the discharge on the first specification, without passing on any of the other three.