LITTLE ANN, The (UNITED STATES v.). See Case No. 15,611.
LITTLE CHARLES, The (UNITED STATES v.). See Cases Nos. 15,612 and 15,613.

———

## Case No. 8,398.

### In re LITTLEFIELD.

[1 Lowell. 331: [1] 3 N. B. R. 57 (Quarto, 13); 2 Am. Law T. 122; 1 Am. Law T. Rep. Bankr. 164.]

District Court, D. Massachusetts. June, 1869.

BANKRUPTCY—DISCHARGE OF BANKRUPT — NOTICE OF ASSIGNEE'S APPOINTMENT—EXAMINATION OF BANKRUPT—REFUSAL TO BE EXAMINED—CASH-BOOK.

1. It is not essential to the debtor's discharge. that the assignee should give due notice of his appointment.

[Cited in Coombs v. Persons Unknown. 82 Me. 326, 19 Atl. 827.]

2. Nor that the second and third general meetings of his creditors should be held at the expiration of three months and six months respectively, from the date of the adjudication.

[Cited in Re Clark, Case No. 2,808.]

3. If a creditor wishes to examine the bankrupt. he must procure an appointment from the register of a time and place for the examination. It is not the bankrupt's duty to see to the appointment. but to be ready to attend on due notice.

4. Whether if a debtor attends and refuses to be examined. there is any remedy excepting by motion to commit, quaere?

5. It is necessary to the discharge of a bankrupt trader. that he should have kept a cash-book subsequently to the passage of the bankrupt act [of 1867 (14 Stat. 517)].

[Cited in Re Bellis. Case No. 1,275; Re Archenbrown. Id. 505; Re Frey, 9 Fed. 379; Re Graves, 24 Fed. 551.]

[In the matter of Hiram Littlefield, a bankrupt.]

C. Lamson, for objecting creditors.
J. C. Perkins, for bankrupt.

LOWELL. District Judge. The first objection taken to the discharge of this bankrupt is that the notice of the appointment of his assignees was not published in the mode pointed out by section 14 of the act [14 Stat.

———

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

522]. It seems that instead of being published once a week, for three successive weeks, this notice was, in one of the newspapers, published three times in the course of two weeks. This is not a ground for refusing the discharge. It has been decided that the bankrupt is bound to see that the proceedings are regular, and if they are not so, he cannot have his discharge. But the courts that have made this law, without much aid from the statute, must construe it reasonably. The bankrupt ought not to be held responsible for all the shortcomings of his assignee, over whom the statute gives him no control. If the latter had neglected his duty in accounting for assets, or in recording his assignment, or in any other matter which relates only to the proper discharge of his trust, and not to the essential validity of the proceedings, that is a matter which the creditors and the courts can take care of. Where there is any failure of jurisdiction, as where, by mistake, the case had been conducted by the wrong register, I have refused the discharge. So, probably, as matter of practice, the meetings must be duly warned, and held before the discharge can be granted, because the act intends that the creditors should have due and full opportunity to meet and consult before the proceedings are closed. This is fairly to be inferred from the whole scope of the act. But I am not able to see that the publication by the assignee of his appointment is essential to the regularity of the proceedings. It is directory to the assignee, and not intended so much for creditors as for persons owing debts to or otherwise having business with the estate. Creditors whose names may be omitted from the schedule are cared for in the provision for publishing notice of the warrant and of the meetings.

The next two specifications are, that the second and third meetings were not held immediately upon the expiration of three months and six months, respectively, after the adjudication was made; and that the omission was not without the fault of the assignee. The language of the statute on this head is certainly somewhat peculiar. The meetings are to be held at the expiration of three months and six months, or earlier if practicable; and "if by accident, mistake, or other cause, and without fault on the part of the assignee, either or both the second and third meetings should not be held within the times limited, the court may, upon the motion of an interested party, order such meetings, with like effect as to the validity of the proceedings, as if the meeting had been duly held." It is impossible to understand all the provisions of the bankrupt act without recollecting that it was borrowed in large part from the well-matured systems of Massachusetts and of England; and that, in adopting it, some discrepancies have crept in. Now, by the law of Massachusetts, it was at one time essential that the second meeting should be held not more than three months after the date of the

warrant, and it was only at that meeting that the insolvent could take the prescribed oath or obtain his certificate. Afterwards, the oath was to be taken at that meeting, and the certificate was to be granted at the third meeting, which, too, was to be held within a given time after the appointment of the assignee. It consequently sometimes happened that the debtor lost his right to discharge, by the neglect of his assignee to call those meetings in season, [for there was no power to call them afterwards nor to do the necessary acts at any other meetings.][2] This law was afterwards modified in some respects, and in 1854 the legislature passed an act, which is now incorporated in the general statutes of the state (chapter 118, § 73) precisely like the above-cited provision of the bankrupt act, excepting that it is general, and not confined to cases of "accident and mistake." A comparison of its language with that of the bankrupt law shows clearly that the latter was copied from it. By the bankrupt act, however, there was no necessity for any such clause; because it is not essential that the second and third meetings should be held at any particular time, but only that they should be held at the expiration of three months and six months; and unless this means on the very day that the months run out, there is no day on which it can be said that it is too late to hold these meetings, unless possibly it may be said that the second meeting should be called before the end of six months. Nor does the bankrupt law require that the necessary oath should be taken, or the discharge be granted, at one of these meetings, or that their being held at any particular time should be in any way essential to the validity of the proceedings. So that, although it is the duty of the assignee to call the meetings at the expiration of the time mentioned,—and he may be required to do so, and may be held responsible for any neglect,—yet neither the debtor's discharge nor any thing else touching the regularity of the proceedings depends upon their being held on the days that these months respectively expire. And if they are not held, any creditor, or the debtor, may call upon the court to require them to be held, though it may have been the fault of the assignee that they were not sooner called. Else it would be in the power of the assignee to take advantage of his own neglect, and to defer indefinitely the accounting which the law requires of him at those meetings. But if all this is wrong, yet, the meetings in this case having been called by order of court, it must be presumed that good cause was shown for their being called when they were.

The next specification is that the debtor refused to submit himself to examination as required by the act. The fact is that the debtor was summoned before the register to be examined, and made some objections which were referred to the court, and over-

---

[2] [From 1 Am. Law T. Rep. Bankr. 164.]

ruled; and the creditor, who is the same now objecting, never pressed for a further hearing. He now takes the position that it was the debtor's duty to notify him when and where the examination would be proceeded with. This is a mistake. It was for the creditor to examine the debtor, if he desired to do so; and to see that due appointments were made with the register for that purpose, and to give the other party notice of them. The debtor's duty was performed when he was ready to be examined upon due notice; and the evidence shows that this debtor was ready. Whether if a bankrupt being present at a legal hearing, refuses to be examined, without good cause, there is any remedy except by motion to commit, I need not now decide.

The only other specification which the evidence makes important is the ninth, that the bankrupt did not, after the passage of the act and before filing his petition, keep proper books of account. It seems that the debtor was engaged in a variety of schemes, none of which was successful. Among other things, he kept a wharf, where he sold wood and coal. His books of this business were kept by a skilful clerk, but there was, during the last part of the time, no cash account whatever, and this by the bankrupt's own act. I regret to be obliged to decide that for this omission the bankrupt must be held to come within the penalty of the statute. A cash account is necessary to an understanding of a trader's business, and it has been decided by two courts that the want of it is fatal under this act. The specification is very general, and I thought at first that it might be held insufficient; but, upon the hearing, I could not see that any injustice would be done by admitting the evidence. If the objection were that certain entries were wanting, or that there were irregularities in the mode of keeping proper books, they ought to be pointed out in the specifications; but where the objection is that a cash account, which all traders should keep, is wholly wanting, it seems to me that the general specification is enough. Besides, an amendment in so simple a matter ought not to be denied. Discharge refused.

On an application to the circuit court for the exercise of its supervisory power, the bankrupt represented that he could now prove that he had kept a cash-book. That court refused to interfere on such a ground, but intimated that this court might do so; and on a rehearing here the discharge was granted.

[NOTE. In re Bellamy [Case No. 1,267], would seem to require a more strict proof of conformity and regard the jurisdiction of the court to grant the discharge as dependent upon the exact conformity of the proceedings to every requirement of the act, and places the responsibility therefor upon the bankrupt. The case of the text is regarded as more in conformity to the true construction of the act. See Bump, Bankr. (6th Ed.) 242].[3]

---

[3] [From 3 N. B. R. 57.]