HAMMER (PUTNAM v.). See Case No. 11,-479.

## Case No. 5,999.

### In re HAMMOND et al.

[1 Lowell, 381; [1] 3 N. B. R. 273 (Quarto. 71).]

District Court, D. Massachusetts. Oct., 1869.

BANKRUPT ACT — MERCHANT'S DUTY TO KEEP BOOKS—FRAUDULENT REMOVAL OF GOODS.

1. A merchant who has failed to keep proper books of account is not entitled to a discharge in bankruptcy, although the fault is wholly with his book-keeper. The law puts upon the merchant the duty of seeing that the books are properly kept, under pain of losing his certificate.

[Cited in Re Archenbrown, Case No. 505.]

[Cited in Re Howard, 59 Vt. 595, 10 Atl. 716.]

2. An omission to write up a merchant's books for a reasonable time while the books are wanted for use in court, the accounts being kept

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

on slips of paper ready to be inserted in their proper places, is not a failure to keep the books.

3. Otherwise, of an omission without excuse, or for an unreasonable time, or a failure to procure new books if the old books are lost. Entries on separate loose slips of paper would not, as a permanent system, be keeping books.

4. A consignment of goods for sale is not a pledge or conveyance of them within section 29 of the bankrupt law [of 1867 (14 Stat. 531)], but where the allegation in specifications of objection to the discharge was of a consignment to one out of the district, in contemplation of bankruptcy and with intent to keep the property from the assignee; *held* (the defendant having waived all questions of mere form), a sufficient charge of a removal of the goods from the district with intent to defraud creditors.

[Cited in Re Frey, 9 Fed. 379; Re Graves, 24 Fed. 551.]

5. If a bankrupt, having knowledge of the existence of his books, and of their place of deposit, refuses to give them to his assignee, and denies their existence. this is a concealment of the books within section 29.

[Quoted in Re Heller, 9 Fed. 375.]

[In bankruptcy. In the matter of Hammond and Coolidge.]

H. W. Paine and R. M. Morse, Jr., for creditors.

E. Avery, for bankrupts.

LOWELL, District Judge. The question whether the bankrupts kept proper books of account is one of fact. The law requires that a merchant or tradesman should keep such books as, considering the nature and circumstances of his trade, are necessary for exhibiting to a person of competent skill the true state of his dealings and affairs. The charge here is that during a certain specified period, about six weeks before the business stopped, the defendants kept neither a cash-book nor a shipping-book. You are relieved from embarrassment in the inquiry whether these books were necessary, because it has been testified on both sides, and is not denied in argument, that these books were kept during some years, and were necessary; though of this you will judge, as of all other facts. No doubt the law means not only that books of the right kind should be kept, but that they should be kept properly; that is, with such reasonable fulness and accuracy as to enable the assignee to acquire the information which books are intended to disclose. But the specification here merely is that no books at all were kept of the sort mentioned during the period alleged, which would not be a sufficient allegation that such books, though kept, were imperfect, because it would not sufficiently point out to the defendants the accusation which they were expected to meet.

You will remember the evidence. It tends to show that for a considerable time, ending with the actual stopping of the business, the books named were not in the hands of the book-keeper, and no entries were made in them. It is said that certain entries were made on pieces of paper, and both sides have asked for rulings concerning such memoranda. As applied to this case, the only ruling I can give is this: That an accidental and temporary omission to make entries in proper books would not be within the law, as, for instance, if the books were taken from Natick to Boston to be used in an important trial, and while they were detained, the clerk made full and accurate memoranda of all the transactions of the firm in such a way that he would be able to write up the books immediately on their being returned to him, it could not be said that the books were not kept. This is merely by way of illustration, and is said to have actually occurred in the month of December. Afterwards, it is said, the books were lost. If so, and if there were no reasonable expectation of finding them, or if they were not found within a reasonable time, it was the duty of the bankrupts to supply their place with others. The question turns on the time that you find the books to have been gone, the intent and good faith of the parties, and whether they did all that prudent business men, intending to keep their accounts accurately, would naturally do. A temporary, accidental omission, in good faith, and for a reasonable time, to make the entries, would not be a failure to keep the books. But a cessation to keep them, on purpose, or for an unreasonable time, would be.

I cannot rule, as requested by the bankrupts' counsel, that if they employed a clerk whom they considered competent, and left the whole charge of the books to him, they are to be discharged. The law does not require traders to keep a book-keeper, but to keep books; and they are responsible to see that it is done. It is not a question of intent at all, or of due diligence, excepting to the extent before explained [that an accident may be overlooked while a fraud would not be.] [2] Nor can I rule that entries on numerous slips of paper, each entry on a separate slip, is a keeping of books, under the law. As I have before ruled, it might do for a short time in the absence of the books; but as a system or policy of a permanent character, no. It is not important whether the book is bound or not; and accounts might be kept on sheets carefully preserved together. You will decide what was done in this case, and whether it amounted to a keeping of the books during the time or about the time specified, under the rules above laid down.

The concealment of the books from the assignee does involve the question of intent. If the books were accidentally lost before the bankruptcy, there can have been no such concealment. If they were not lost, but within the control of the defendants, and were not given up on demand, but their existence denied, the charge is sustained. [It is not necessary that they should have been

---

[2] [From 3 N. B. R. 273 (Quarto, 71).]

put in any unusual or out of the way place.][3]

The charge that certain goods were, at certain times, consigned to Mr. Henry, of Louisville, Kentucky, in contemplation on the part of the defendants, of bankruptcy, and with intent, &c., is relied on as a transfer of property, and as a removal of property from the district. In my judgment the clause concerning any pledge, payment, conveyance, &c., does not include a consignment, which would not ordinarily change the title, but be merely the employment of an agent. It is not shown that Henry had made any advances on the goods, or had any pledge of them. It does seem sufficient, in substance (the defendants having waived objections of form), as a charge of a removal from the district, and if it was done with a view at the time by the defendants of becoming bankrupt and having their property distributed under the law, and with intent to keep the property from their assignee, that is, in substance, a sufficient charge that it was to defraud their creditors. As all this is alleged, though the contemplation of bankruptcy was not a necessary allegation. it must be proved. You will say therefore, whether, when these acts were done, if you find that they were done, it was in the view and with the intent charged.

[The jury found the bankrupts guilty.] [3]

---

[3] [From 3 N. B. R. 273 (Quarto, 71).]

