GEORGE Z. WORK and Others v. A. HOLMBOE.[1]

May 11, 1896.

Nos. 10,058—(99).

64 383
68 258

**Insolvency—Distribution without Releases—Books of Account.**

*Held* that the evidence justified an order that the insolvent debtor's property be distributed among his creditors without their filing releases, on the ground "that he had not kept books of account or records from which his true condition could be ascertained."

[2] At page 32.         [1] Reported in 67 N. W. 205.

Petition in the district court for Polk county in the matter of the assignment of A. Holmboe, insolvent, for the distribution of the insolvent's estate among his creditors without their filing releases. From an order, Ives, J., directing distribution as prayed for, the insolvent appealed. Affirmed.

*H. Steenerson*, for appellant.

*De Forest Bucklen* and *Bangs & Fisk*, for respondents.

MITCHELL, J. This appeal is from an order of the district court directing that the debtor's property be distributed among his creditors without their filing releases, on the ground "that he has not kept books of account or records from which his true condition can be ascertained." G. S. 1894, § 4249. The only question is whether the evidence justified the court in holding that the insolvent had not kept such books of account as the statute requires.

He was a merchant doing quite a large business, employing at times as many as six clerks, and selling at the rate of from $50 to $200 or more per day. The only books of account kept by him were for the purpose of showing debits and credits,—that is, the amounts due him for goods sold on credit and what he owed for goods bought on credit,—and even as to these matters the books were very imperfect and incomplete. He kept neither merchandise, expense, nor cash account. The books contain no account of the amount of goods bought for cash, of goods sold for cash; of the amount of goods or cash taken out for himself and family, of the amount of cash received from sales, or of what was done with the cash. In short, the books contained absolutely nothing tending to show the extent or nature of his business transactions, except an imperfect account of what he was owing for goods bought, and of what was due him for goods sold on credit.

These were not such books as the statute requires to be kept by a merchant. The idea of his counsel is that all the books need show is what the insolvent owes, and what is owing to him; and that from this his true condition can always be ascertained by taking an inventory of what property he has on hand and in sight. We cannot concur in this view. Logically, you might as well go a step further, and require no books at all, but leave the assignee and creditors to find out, as best they could, what the debts and credits of the insolvent were, as well as what chattel or real prop-

erty he had. The very object of books of account is to show the true state of the debtor's dealings and affairs, and truthfully exhibit his business transactions. As is said in Ekberg v. Schloss, 62 Minn. 427, 64 N. W. 922: "The question of what are sufficient books of account, within the meaning of this statute, must depend upon the facts of each particular case, and especially upon the nature and volume of the business of which they purport to be a record. What would be sufficient in one case would be insufficient in another; hence no uniform rule can be laid down. No particular form or system is required, but we are of the opinion that a person who is conducting a business requiring the keeping of books of account or records thereof must, to comply with the statute, so keep them as to show his financial standing, and furnish the means of ascertaining with reasonable certainty what he has done with his property." This last is, in our judgment, the most important object in requiring books of account in order that creditors may have the means of ascertaining whether the debtor has honestly turned over all his property, or whether he has concealed any of it from the assignee or receiver.

We can see no material difference in the meaning of "proper books of account" required by the federal bankrupt act of 1867,[2] and "books of account or records from which his true condition can be ascertained," required by our insolvent law. As showing how the federal courts construed the former, and what they considered to be the purpose for which such books were required, see In re Hammond, 1 Low. 381, Fed. Cas. No. 5,999; In re Littlefield, 1 Low. 331, Fed. Cas. No. 8,398; In re Keach, 1 Low. 335, Fed. Cas. No. 7,629; In Matter of Newman, 3 Ben. 20, Fed. Cas. No. 10,175; In re Vernia, 5 Fed. 723; In re Williams, 13 Fed. 30.

The facts of the present case illustrate the utter insufficiency of these books to furnish creditors any means of ascertaining the debtor's condition, or what he has done with his property. In January, 1894, he commenced business with about $9,000 assets and no debts. In December, 1894, when he made an assignment, his assets, as scheduled by him, were $13,700, and his debts $23,100, showing a loss during 11 months of over $18,000, and yet his books do not furnish the least clue as to where this property has gone, or how the loss, if any, occurred.

[2] 14 Stat. 517, c. 176.

There is nothing in the point that the court's "finding" was too general, because not specifying in what particular the insolvent's true condition could not be ascertained from the books. No findings were necessary.

Order affirmed.